**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FIRST FRANCHISE CAPITAL      :
CORPORATION      :
8888 Keystone Crossing, Ste. 1700      :
Indianapolis, IN 46240      :
     :
         Plaintiff,      :
     :
vs.      :
     :
DENN-OHIO, LLC      :
9299 Northcreek Woods.      :
Lambertville, MI 48144      :
Attn: Thomas F. Pilbeam, Member      :
     :
         <u>Serve Also:</u>      :
         Jack Thompson, Reg. Agent      :
         910 Armstrong Dr.      :
         Willard, OH 44890      :
     :
and      :
     :
JMAD HOSPITALITY, LLC      :
1002 Armstrong Dr.      :
Willard, OH 44890      :
Attn: Highest Ranking Officer      :
     :
         <u>Serve Also:</u>      :
         Jack Thompson, Reg. Agent      :
         910 Armstrong Dr.      :
         Willard, OH 44890      :
     :
and      :
     :
PTS HOSPITALITY, LLC      :
9299 Northcreek Woods      :
Lambertville, MI 48144      :
Attn: Thomas F. Pilbeam, Member      :
     :
         <u>Serve Also:</u>      :
         Thomas Pilbeam, Reg. Agent      :
         1122 Buck Road      :
         Rossford, OH 43460      :
     :
and      :

Case No. 1:23-cv-503

Judge _____

20055316v1

|  | : |
| --- | --- |
| THOMAS F. PILBEAM | : |
| 9299 Northcreek Woods | : |
| Lambertville, MI 48144 | : |
|  | : |
| and | : |
|  | : |
| NANCY L. PILBEAM | : |
| 9299 Northcreek Woods | : |
| Lambertville, MI 48144 | : |
|  | : |
| and | : |
|  | : |
| THOMAS F. PILBEAM, JR., TRUSTEE | : |
| OF THE THOMAS F. PILBEAM, JR., | : |
| IRREVOCABLE TRUST | : |
| 9299 Northcreek Woods | : |
| Lambertville, MI 48144 | : |
|  | : |
| and | : |
|  | : |
| JACK THOMPSON, SR. EXECUTOR OF | : |
| THE ESTATE OF JACK E. THOMPSON | : |
| 4646 Chatfield Center Road | : |
| New Washington, OH 44854 | : |
|  | : |
| Defendants. | : |

---

**COMPLAINT FOR MONEY DAMAGES, APPOINTMENT OF RECEIVER,**

**ENFORCEMENT OF SECURITY AGREEMENTS, AND RELATED RELIEF**

---

For its complaint against defendants Denn-Ohio, LLC ("Denn-Ohio"), JMAD Hospitality,

LLC ("JMAD"), PTS Hospitality, LLC ("PTS," collectively with Denn-Ohio and JMAD, the

"Borrowers") and Thomas F Pilbeam ("Thomas Pilbeam"), Nancy L. Pilbeam ("Nancy Pilbeam"),

Thomas F. Pilbeam, Jr., Trustee of the Thomas F. Pilbeam, Jr. Irrevocable Trust ("Pilbeam

Trustee") and Jack Thompson, Sr., Executor of the Estate of Jack E. Thompson (the "Executor")

and collectively with the Borrowers, the "Defendants," plaintiff First Franchise Capital

20055316v1

Corporation ("FFCC") alleges as follows:

## NATURE OF THE ACTION

1.      This action arises out of Defendants' ongoing breaches of three master loan agreements and/or other agreements, instruments and documents that they executed in favor of FFCC in order to induce FFCC to lend nearly $9,300,000 so that Borrowers could acquire and operate twenty-seven restaurants spread over four states.

2.      Despite Defendants promising that all loan obligations would be completely satisfied in a timely fashion, there have been multiple events of default to date including Borrowers' failure to remit to FFCC the ERTC refund it received.

3.      FFCC has attempted to work with Defendants and has given Defendants additional time to satisfy their obligations, but Defendants have repeatedly failed to do so and, as a result, have caused FFCC to incur millions of dollars in monetary damages.

4.      In addition to Defendants' various defaults, Borrowers have also failed to operate the restaurants for which they obtained the loans from FFCC in a manner that will preserve the value of FFCC's collateral. Indeed, eleven of the restaurants were closed by the Borrowers without the consent of FFCC and the death and subsequent estate of one of the principals involved with the Borrowers has rendered the corporate functions of the Borrowers impossible to the detriment of the businesses. Thus, FFCC seeks the appointment of a receiver for the Borrowers who will be charged with managing the affairs of the Borrower entities in a manner that will preserve the value of FFCC's collateral.

## PARTIES

5.      Plaintiff FFCC is an Indiana corporation. FFCC's principal place of business is in Indiana, but it is licensed to do business in Ohio and conducts certain relevant operations out of

Hamilton County, where its parent company is headquartered.

6. Defendant Denn-Ohio is a Michigan limited liability company with its principal place of business at 9299 Northcreek Woods, Lambertville, MI 48144.

7. Defendant JMAD is an Ohio limited liability company with its principal place of business at 1002 Armstrong Dr., Willard, OH 44890.

8. Defendant PTS is a Michigan limited liability company with its principal place of business at 9299 Northcreek Woods, Lambertville, MI 48144.

9. Defendant Thomas Pilbeam is a resident of Michigan with a last known address of 9299 Northcreek Woods, Lambertville, MI 48144.

10. Defendant Nancy Pilbeam is a resident of Michigan with a last known address of 9299 Northcreek Woods, Lambertville, MI 48144.

11. Defendant Pilbeam Trustee is the trustee of the Thomas F. Pilbeam, Jr. Irrevocable Trust, a trust formed under the laws of the State of Michigan, with a last known address of 9299 Northcreek Woods, Lambertville, MI 48144.

12. Defendant Executor is the executor of the estate of Jack E. Thompson pending in the Probate Court for Huron County, Ohio, with a last known address of 4646 Chatfield Center Road, New Washington, OH 44854.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

14. This Court possesses personal jurisdiction over the Defendants because each has expressly consented to the jurisdiction of this Court.

15. Venue is proper in this Court because, among other things, many of the contractual

20055316v1

obligations that Defendants breached were supposed to be performed in this district, and Defendants have expressly consented to venue in this district.

## BACKGROUND

### *FFCC's Loans to Defendants*

### *Denn-Ohio*

16.     On or about March 29, 2017, FFCC and Denn-Ohio executed a Master Loan Agreement (the "Denn-Ohio Loan Agreement").

17.     The Denn-Ohio Loan Agreement was subsequently modified on August 16, 2017, December 1, 2017, June 1, 2018 and April 10, 2020. A true and accurate copy of the Denn-Ohio Loan Agreement, as it has been amended and modified from time to time, is attached hereto as **Exhibit A**.

18.     Pursuant to the Denn-Ohio Loan Agreement, as modified, FFCC issued two loans to Denn-Ohio for Denn-Ohio's use in operating approximately nineteen restaurant locations in four states franchised by Dennny's®.

19.     Specifically, on or about June 28, 2017, Denn-Ohio executed and delivered to FFCC a secured promissory note for Loan No.***948 in the original principal amount of $6,959,080.09 ("Denn-Ohio Note A"). A true and accurate copy of Denn-Ohio Note A is attached hereto as **Exhibit B**.

20.     On or about June 1, 2018, Denn-Ohio executed and delivered to FFCC another secured promissory note for Loan No. ***460 in the original principal amount of $771,000.00 ("Denn-Ohio Note E" and, with Denn-Ohio Note A, the "Denn-Ohio Notes"). A true and accurate copy of Denn-Ohio Note E is attached hereto as **Exhibit C**.

### *JMAD*

21.     On or about March 29, 2017, FFCC and JMAD executed a Master Loan Agreement

- 5 -

(the "JMAD Loan Agreement").

22.     The JMAD Loan Agreement was subsequently modified on August 9, 2017, February 14, 2018, June 29, 2018, August 16, 2018, August 29, 2018 and April 10, 2020. A true and accurate copy of the JMAD Loan Agreement, as it has been amended and modified from time to time, is attached hereto as **Exhibit D**.

23.     Pursuant to the JMAD Loan Agreement, as modified, FFCC issued five loans to JMAD for JMAD's use in operating approximately five restaurant locations in Ohio franchised by Denny's®.

24.     Specifically, on or about March 29, 2017, JMAD executed and delivered to FFCC a secured promissory note for Loan No. ***574 in the original principal amount of $604,150.00 ("JMAD Note A"). A true and accurate copy of JMAD Note A is attached hereto as **Exhibit E**.

25.     On or about August 9, 2017, JMAD executed and delivered to FFCC another secured promissory note for Loan No. ***413 in the original principal amount of $128,661.00 ("JMAD Note B"). A true and accurate copy of JMAD Note B is attached hereto as **Exhibit F**.

26.     Specifically, on or about February 4, 2018, JMAD executed and delivered to FFCC a secured promissory note for Loan No. ***323 in the original principal amount of $180,000.00 ("JMAD Note C"). A true and accurate copy of JMAD Note C is attached hereto as **Exhibit G**.

27.     On or about June 29, 2018, JMAD executed and delivered to FFCC another secured promissory note for Loan No. ***643 in the original principal amount of $150,000.00 ("JMAD Note D-1"). A true and accurate copy of JMAD Note D-1 is attached hereto as **Exhibit H**.

28.     On or about August 29, 2018, JMAD executed and delivered to FFCC another secured promissory note for Loan No. ***834 in the original principal amount of $150,000.00 ("JMAD Note E"). A true and accurate copy of JMAD Note E is attached hereto as **Exhibit I**.

- 6 -

***PTS***

29.    On or about March 29, 2017, FFCC and PTS executed a Master Loan Agreement (the "PTS Loan Agreement").

30.    The PTS Loan Agreement was subsequently modified on October 4, 2018, December 7, 2018 and April 10, 2020. A true and accurate copy of the PTS Loan Agreement, as it has been amended and modified from time to time, is attached hereto as **Exhibit J**.

31.    Pursuant to the PTS Loan Agreement, as modified, FFCC issued two loans to PTS for PTS' use in operating approximately three restaurant locations in two states franchised by Denny's®.

32.    Specifically, on or about October 4, 2018, PTS executed and delivered to FFCC secured promissory note for Loan No. ***569 in the original principal amount of $200,000.00 ("PTS Note B"). A true and accurate copy of PTS Note B is attached hereto as **Exhibit K**.

33.    On or about December 7, 2018, PTS executed and delivered to FFCC another secured promissory note for Loan No. ***973 in the original principal amount of $153,187.11 ("PTS Note C"). A true and accurate copy of PTS Note C is attached hereto as **Exhibit L**.

***The Loan Agreements***

34.    Each Borrower "promise[d] to pay and to perform, observe and comply with when due all of the Obligations" set forth in the Denn-Ohio Loan Agreement, the JMAD Loan Agreement and the PTS Loan Agreement, (collectively, the "Loan Agreements").

35.    The Loan Agreements defined Events of Default to include, among other things, any Borrowers' failure to pay any interest or principal owed pursuant to the Loan Agreements; any Borrower's failure to observe, comply with, or perform any other covenant, condition or agreement set forth in the Loan Agreements; or any event that has, or could be reasonably expected to have, any material adverse effect upon the business or operations of any Borrower, that materially

- 7 -

impairs any Borrower's ability to perform its obligations under the Loan Agreements, that has any material adverse effect upon the title to or value of any collateral pledged by the Borrowers pursuant to the Loan Agreements, or that materially impairs or delays FFCC's ability to enforce the Loan Agreements or collect on the obligations owed thereunder.

36.    In the event of default, the Loan Agreements afforded FFCC broad discretion to exercise the various remedies available to it, including declaring all loan obligations immediately due and payable upon demand; taking immediate possession of any collateral, wherever located; collecting, compromising, taking or otherwise dealing with the collateral and proceeds thereof in FFCC's own name; and selling or otherwise disposing of all or any part of the collateral supporting the loan.

37.    In addition, the Loan Agreements expressly stated that, should an Event of Default occur, FFCC had the right to "[p]etition for and obtain the appointment of a receiver, without notice of any kind whatsoever or obtaining any bond, to take possession of any or all of" the collateral pledged by Borrowers pursuant to the Loan Agreements, and "to exercise such rights and powers as the court appointing such receiver shall confer upon such receiver."

38.    Indeed, the Borrowers acknowledged "that portions of the Collateral could be difficult to preserve and dispose of and be further subject to complex maintenance and management," and, as a result, agreed that FFCC "shall have the widest possible latitude to preserve and protect the" collateral pledged by Borrowers, as well as FFCC's "security interest in and Lien thereon."

### *The Security Agreements*

39.    Pursuant to the Loan Agreements and to secure the Obligations, the following Security Agreements were executed in favor of FFCC: (a) Security Agreement dated as of March

- 8 -

29, 2017 from Denn-Ohio with respect to the collateral described therein (the "Denn-Ohio Security Agreement"), a true and accurate copy of which is attached hereto as **Exhibit M**; (b) Security Agreement dated as of March 29, 2017, from JMAD with respect to the collateral described therein (the "JMAD Security Agreement 1"), a true and accurate copy of which is attached hereto as **Exhibit N**; (c) Security Agreement dated as of March 29, 2017 from PTS with respect to the collateral described therein (the "PTS Security Agreement 1"), a true and accurate copy of which is attached hereto as **Exhibit O**; (d) Security Agreement dated as of March 29, 2017, from JMAD with respect to the collateral described therein (the "JMAD Security Agreement 2"), a true and accurate copy of which is attached hereto as **Exhibit P**; (e) Security Agreement dated as of March 29, 2017, from PTS with respect to the collateral described therein (the "PTS Security Agreement 2"), a true and accurate copy of which is attached hereto as **Exhibit Q** (collectively, the "Security Agreements").

40. The security interests conveyed in the Security Agreements were perfected by virtue of the filing of UCC Financing Statements in the respective states where the secured debtors are domiciled.

### *The Guaranties*

41. So as to induce FFCC to extend the credit evidenced by the Denn-Ohio Loan Agreement, the following guaranties were executed in favor of FFCC: (a) Guaranty dated March 29, 2017, executed by Thomas Pilbeam, a true and accurate copy of which is attached hereto as **Exhibit R** ("Denn-Ohio Guaranty 1"); (b) Guaranty dated March 29, 2017, executed by PTS, a true and accurate copy of which is attached hereto as **Exhibit S** ("Denn-Ohio Guaranty 2"); (c) Guaranty dated March 29, 2017, executed by JMAD, a true and accurate copy of which is attached hereto as **Exhibit T** ("Denn-Ohio Guaranty 3); (d) Guaranty dated on or about December 30, 2022,

executed by Executor, a true and accurate copy of which is attached hereto as **Exhibit U** ("Denn-Ohio Guaranty 4" and, collectively with Denn-Ohio Guaranty 1 Denn-Ohio Guaranty 2 and Denn-Ohio Guaranty 3, the "Denn-Ohio Guaranties").

42.     So as to induce FFCC to extend the credit evidenced by the JMAD Loan Agreement, the Executor executed the document identified as the Denn-Ohio Guaranty 4.

43.     So as to induce FFCC to extend the credit evidenced by the PTS Loan Agreement, the following guaranties were executed in favor of FFCC: (a) Guaranty dated March 29, 2017, executed by Thomas Pilbeam, a true and accurate copy of which is attached hereto as **Exhibit V** ("PTS Guaranty 1"); (b) Guaranty dated March 29, 2017, executed by Nancy Pilbeam, a true and accurate copy of which is attached hereto as **Exhibit W** ("PTS Guaranty 2"); (c) Guaranty dated October 4, 2018, executed by Pilbeam Trustee, a true and accurate copy of which is attached hereto as **Exhibit X** ("PTS Guaranty 3" and, collectively with PTS Guaranty 1 and PTS Guaranty 2, the "PTS Guaranties").

44.     In the Guaranties, Thomas Pilbeam, Nancy Pilbeam, PTS, JMAD, Executor and Pilbeam Trustee absolutely and unconditionally guaranteed to FFCC the full and punctual payment and satisfaction of all Guaranteed Obligations as defined in the Guaranties.

### *Defendants Default and FFCC Demands Payment*

45.     By April of 2020, Borrowers had fallen out of compliance with the Loan Agreements despite significant help from FFCC.  By a Modification of Loan Documents dated April 10, 2020 on each loan, FFCC had agreed to suspend the obligations of Defendants to make payments.

46.     Subsequent to this, FFCC entered into a Forbearance Agreement on each loan effective as of July 10, 2022, which provided the Borrowers until December 31, 2022 to payoff all

of the Obligations owing on each loan (the "Denn-Ohio Forbearance Agreement", the "JMAD Forbearance Agreement" and the PTS Forbearance Agreement"). A true and accurate copy of the Denn-Ohio Forbearance Agreement is attached hereto as **Exhibit Y**. A true and accurate copy of the JMAD Forbearance Agreement is attached hereto as **Exhibit Z**. A true and accurate copy of the PTS Forbearance Agreement is attached hereto as **Exhibit AA**.

47.     The Borrowers were unable to payoff the Obligations as of December 31, 2022, so the parties entered into another Forbearance Agreement dated as of December 31, 2022, which provided the Borrowers until March 31, 2023 to payoff the Obligations (the "December 2022 Forbearance Agreement"). A true and accurate copy of the December 2022 Forbearance Agreement is attached hereto as **Exhibit BB**.

48.     The Borrowers were unable to payoff the Obligations as of March 31, 2023, so the parties entered into First Amendment to Forbearance Agreement dated June 6, 2022 (the "First Amendment"). A true and accurate copy of the First Amendment is attached hereto as **Exhibit CC**.

49.     Among other things, Borrowers were required to immediately notify FFCC of any ERTC refund received and was permitted to retain the ERTC refund provided it wired FFCC the sum of $1,050,000.00.

50.     Borrowers failed to notify FFCC of the ERTC refund receipt. However, FFCC learned of the ERTC refund receipt and, despite demand letters dated July 6, 2023 and July 10, 2023, demanding the remittance of the amount required by the First Amendment, the Borrowers failed to remit the required amount and remain in possession of a portion of the ERTC refund receipt to which FFCC is entitled. Thus, on July 25, 2023, FFCC notified the Defendants by letter that they had defaulted on their respective obligations and declared FFCC's intent to exercise its

- 11 -

rights under the Loan Agreements.

51.     To that end, FFCC demanded from the Defendants payment of all outstanding obligations in immediately available funds on or before July 28, 2023.

52.     Borrowers further failed to provide by August 1, 2023, a commitment letter or appropriate documentation from a reputable source that shows that FFCC will be repaid in full on before August 31, 2023 and executed deposit account control agreements with various institutions in favor of FFCC.

53.     Consequently, FFCC made a further demand from the Defendants payment of all outstanding obligations in immediately available funds on or before August 3, 2023.

54.     As of July 28, 2023, Denn-Ohio was indebted to FFCC in an amount not less than $3,234,449.88, plus interest that continues to accrue at the default rate of interest set forth in the Notes and all other amounts due and payable under the terms of the Denn-Ohio Loan Agreement, such as attorneys' fees and other costs of collection.

55.     As of July 28, 2023, JMAD was indebted to FFCC in an amount not less than $594,789.41, plus interest that continues to accrue at the default rate of interest set forth in the Notes and all other amounts due and payable under the terms of the JMAD Loan Agreement, such as attorneys' fees and other costs of collection.

56.     As of July 28, 2023, PTS was indebted to FFCC in an amount not less than $231,859.44, plus interest that continues to accrue at the default rate of interest set forth in the Notes and all other amounts due and payable under the terms of the PTS Loan Agreement, such as attorneys' fees and other costs of collection.

### *Defendants Fail to Preserve FFCC's Collateral*

57.     FFCC has learned that Borrowers have failed to operate the restaurants that were funded by the Loan Agreement in a manner that preserves the value of FFCC's collateral, and its

20055316v1

ability to execute on and collect that collateral without delay. Indeed, eleven of the restaurants were closed by the Borrowers without the consent of FFCC and the death and subsequent estate of one of the principals involved with the Borrowers has rendered the corporate functions of the Borrowers impossible to the detriment of the businesses.

58.     When FFCC has been able to obtain financial records, those records demonstrate that the Defendants do not have sufficient financial resources to maintain the operations of the restaurants that remain open and FFCC has reason to believe that if a receiver is not appointed immediately to take control of Defendants and their assets, those restaurants may also be closed or effectively managed out of existence by Defendants.

### COUNT I – BREACH OF CONTRACT
**(Breach of loan agreement against Denn-Ohio)**

59.     FFCC incorporates the foregoing allegations as though fully restated herein.

60.     The Denn-Ohio Loan Agreement constitutes a binding and enforceable contract that was executed by Denn-Ohio in favor of FFCC.

61.     FFCC has performed all of its obligations in connection with the Denn-Ohio Loan Agreement.

62.     Denn-Ohio, however, has failed and refused to comply with its obligations under the Denn-Ohio Loan Agreement by, among other things, failing to comply with the First Amendment.

63.     Denn-Ohio's failure and refusal to comply with their obligations under the Denn-Ohio Loan Agreement constitute breaches of the Denn-Ohio Loan Agreement.

64.     FFCC has demanded that Denn-Ohio rectify their ongoing breaches and reimburse or pay FFCC for the damages FFCC has incurred, but Denn-Ohio has failed and refused to do so and remain in violation of the Denn-Ohio Loan Agreement.

- 13 -

65.     As a result of Denn-Ohio's breaches of the Denn-Ohio Loan Agreement, FFCC has incurred in excess of $3,234,449.88 in damages.

**COUNT II – BREACH OF CONTRACT**
**(Breach of loan agreement against JMAD)**

66.     FFCC incorporates the foregoing allegations as though fully restated herein.

67.     The JMAD Loan Agreement constitutes a binding and enforceable contract that was executed by JMAD in favor of FFCC.

68.     FFCC has performed all of its obligations in connection with the JMAD Loan Agreement.

69.     JMAD, however, has failed and refused to comply with its obligations under the JMAD Loan Agreement by, among other things, failing to comply with the First Amendment.

70.     JMAD's failure and refusal to comply with their obligations under the JMAD Loan Agreement constitute breaches of the JMAD Loan Agreement.

71.     FFCC has demanded that JMAD rectify their ongoing breaches and reimburse or pay FFCC for the damages FFCC has incurred, but JMAD has failed and refused to do so and remain in violation of the JMAD Loan Agreement.

72.     As a result of JMAD's breaches of the JMAD Loan Agreement, FFCC has incurred in excess of $594,789.41 in damages.

**COUNT III – BREACH OF CONTRACT**
**(Breach of loan agreement against PTS)**

73.     FFCC incorporates the foregoing allegations as though fully restated herein.

74.     The PTS Loan Agreement constitutes a binding and enforceable contract that was executed by PTS in favor of FFCC.

75.     FFCC has performed all of its obligations in connection with the PTS Loan

Agreement.

76.     PTS, however, has failed and refused to comply with its obligations under the PTS Loan Agreement by, among other things, failing to comply with the First Amendment.

77.     PTS' failure and refusal to comply with their obligations under the PTS Loan Agreement constitute breaches of the PTS Loan Agreement.

78.     FFCC has demanded that PTS rectify their ongoing breaches and reimburse or pay FFCC for the damages FFCC has incurred, but PTS has failed and refused to do so and remain in violation of the PTS Loan Agreement.

79.     As a result of PTS' breaches of the PTS Loan Agreement, FFCC has incurred in excess of $231,859.44 in damages.

### COUNT IV – BREACH OF CONTRACT
### (Breach of Security Agreement against Denn-Ohio)

80.     FFCC incorporates the foregoing allegations as though fully restated herein.

81.     As a result of the breaches outlined herein, the Denn-Ohio Security Agreement is in default.

82.     Section 6.1 of the Denn-Ohio Security Agreements provide that "[a]fter the occurrence and during the continuance of an Event of Default, Secured Party may resort to the rights and remedies available at law, in equity and under the Loan Documents including the rights and remedies of a secured party under the Uniform Commercial Code."

83.     As a result of the breach of the Denn-Ohio Security Agreement, FFCC requests a judicial determination of a default and for execution of all of its rights and remedies as set forth in the Denn-Ohio Security Agreement.

- 15 -

## COUNT V – BREACH OF CONTRACT
### (Breach of Security Agreement against JMAD)

84.     FFCC incorporates the foregoing allegations as though fully restated herein.

85.     As a result of the breaches outlined herein, the JMAD Security Agreement 1 and JMAD Security Agreement 2 are in default.

86.     Section 6.1 of the JMAD Security Agreements provide that "[a]fter the occurrence and during the continuance of an Event of Default, Secured Party may resort to the rights and remedies available at law, in equity and under the Loan Documents including the rights and remedies of a secured party under the Uniform Commercial Code."

87.     As a result of the breach of the JMAD Security Agreements, FFCC requests a judicial determination of a default and for execution of all of its rights and remedies as set forth in the JMAD Security Agreements.

## COUNT VI – BREACH OF CONTRACT
### (Breach of Security Agreement against PTS)

88.     FFCC incorporates the foregoing allegations as though fully restated herein.

89.     As a result of the breaches outlined herein, the PTS Security Agreement 1 and PTS Security Agreement 2 are in default.

90.     Section 6.1 of the PTS Security Agreements provide that "[a]fter the occurrence and during the continuance of an Event of Default, Secured Party may resort to the rights and remedies available at law, in equity and under the Loan Documents including the rights and remedies of a secured party under the Uniform Commercial Code."

91.     As a result of the breach of the PTS Security Agreements, FFCC requests a judicial determination of a default and for execution of all of its rights and remedies as set forth in the PTS Security Agreements.

- 16 -

## COUNT VII – BREACH OF GUARANTY
### (Thomas Pilbeam)

92.     FFCC incorporates the foregoing allegations as though fully restated herein.

93.     As a result of the default under the Denn-Ohio Loan Agreement, Denn-Ohio Guaranty 1 is in default.

94.     As a result of the default, Thomas Pilbeam is obligated to FFCC on Denn-Ohio Guaranty 1 in an amount not less than $3,234,449.88, plus interest that continues to accrue at the default rate of interest set forth in the Denn-Ohio Notes and all other amounts due and payable under the terms of the Denn-Ohio Loan Agreement, such as attorneys' fees and other costs of collection.

## COUNT VIII – BREACH OF GUARANTY
### (PTS)

95.     FFCC incorporates the foregoing allegations as though fully restated herein.

96.     As a result of the default under the Denn-Ohio Loan Agreement, Denn-Ohio Guaranty 2 is in default.

97.     As a result of the default, PTS is obligated to FFCC on Denn-Ohio Guaranty 2 in an amount not less than $3,234,449.88, plus interest that continues to accrue at the default rate of interest set forth in the Denn-Ohio Notes and all other amounts due and payable under the terms of the Denn-Ohio Loan Agreement, such as attorneys' fees and other costs of collection.

## COUNT IX – BREACH OF GUARANTY
### (JMAD)

98.     FFCC incorporates the foregoing allegations as though fully restated herein.

99.     As a result of the default under the Denn-Ohio Loan Agreement, Denn-Ohio Guaranty 3 is in default.

100.     As a result of the default, JMAD is obligated to FFCC on Denn-Ohio Guaranty 3

- 17 -

in an amount not less than $3,234,449.88, plus interest that continues to accrue at the default rate of interest set forth in the Denn-Ohio Notes and all other amounts due and payable under the terms of the Denn-Ohio Loan Agreement, such as attorneys' fees and other costs of collection.

### COUNT X – BREACH OF GUARANTY
**(Executor)**

101.    FFCC incorporates the foregoing allegations as though fully restated herein.

102.    As a result of the default under the Denn-Ohio Loan Agreement and the JMAD Loan Agreement, Denn-Ohio Guaranty 4 is in default.

103.    As a result of the default, Executor is obligated to FFCC on Denn-Ohio Guaranty 4 in an amount not less than $3,828,939.29, plus interest that continues to accrue at the default rate of interest set forth in the Denn-Ohio Notes and JMAD Notes and all other amounts due and payable under the terms of the Denn-Ohio Loan Agreement and the JMAD Loan Agreement, such as attorneys' fees and other costs of collection.

### COUNT XI – BREACH OF GUARANTY
**(Thomas Pilbeam)**

104.    FFCC incorporates the foregoing allegations as though fully restated herein.

105.    As a result of the default under the PTS Loan Agreement, PTS Guaranty 1 is in default.

106.     As a result of the default, Thomas Pilbeam is obligated to FFCC on PTS Guaranty 1 in an amount not less than $231,859.44, plus interest that continues to accrue at the default rate of interest set forth in the PTS Notes and all other amounts due and payable under the terms of the PTS Loan Agreement, such as attorneys' fees and other costs of collection.

### COUNT XII – BREACH OF GUARANTY
**(Nancy Pilbeam)**

107.    FFCC incorporates the foregoing allegations as though fully restated herein.

- 18 -

108.    As a result of the default under the PTS Loan Agreement, PTS Guaranty 2 is in default.

109.    As a result of the default, Nancy Pilbeam is obligated to FFCC on PTS Guaranty 2 in an amount not less than $231,859.44, plus interest that continues to accrue at the default rate of interest set forth in the PTS Notes and all other amounts due and payable under the terms of the PTS Loan Agreement, such as attorneys' fees and other costs of collection.

## COUNT XIII – BREACH OF GUARANTY
### (Pilbeam Trustee)

110.    FFCC incorporates the foregoing allegations as though fully restated herein.

111.    As a result of the default under the PTS Loan Agreement, PTS Guaranty 3 is in default.

112.    As a result of the default, Pilbeam Trustee is obligated to FFCC on PTS Guaranty 3 in an amount not less than $231,859.44, plus interest that continues to accrue at the default rate of interest set forth in the PTS Notes and all other amounts due and payable under the terms of the PTS Loan Agreement, such as attorneys' fees and other costs of collection.

## COUNT XIV – PREJUDGMENT APPOINTMENT OF RECEIVER

113.    FFCC incorporates the foregoing allegations as though fully restated herein.

114.    Pursuant to the Loan Agreements, Borrowers agreed that in the event of a default FFCC would have the right to petition for and obtain the appointment of a receiver, without notice of any kind whatsoever or obtaining any bond, to take possession of any or all of the collateral and business of each Borrower and to exercise such rights and powers as the court appointing such receiver shall confer upon such receiver. (Loan Agreements, § 8.2(a)(vii)).

115.    The Borrowers specifically acknowledged that portions of the collateral pledged by Borrowers pursuant to the Loan Agreement could be difficult to preserve and dispose of and be

- 19 -

further subject to complex maintenance and management, and that, as a result, FFCC shall have the widest possible latitude in exercising its rights to preserve and protect such collateral, and FFCC's security interest in and lien on the same.

116. There have been multiple events of default under the Loan Agreement, including, among other things, Borrowers' failure to make timely loan payments, the failure to turn over the ERTC funds, the failure to provide financial documentation and the closure of a number of the restaurants that were to be funded by the Loan Agreement.

117. Borrowers have not taken - and are not taking - reasonable steps to preserve the value of FFCC's collateral or to protect FFCC's ability to execute on and collect that collateral without delay.

118. In fact, Borrowers' operation of the restaurants has accelerated depreciation in value of FFCC's collateral.

119. Accordingly, FFCC requires the appointment of a receiver who will assume control of the operation of Borrowers and their assets.

**WHEREFORE**, plaintiff First Franchise Capital Corporation respectfully demands judgment against defendants Denn-Ohio, LLC, JMAD Hospitality, LLC, PTS Hospitality, LLC, Thomas F Pilbeam, Nancy L. Pilbeam, Thomas F. Pilbeam, Jr., Trustee of the Thomas F. Pilbeam, Jr. Irrevocable Trust and the Jack E. Thompson, Executor of the Estate of Jack E. Thompson:

    A.    Enter judgment against Borrowers, jointly and severally, and in favor of FFCC on FFCC's claim for breach of the Loan Agreements;

    B.    Enter judgment against Borrowers in favor of FFCC on FFCC's claim for breach of the Security Agreements;

    C.    Enter judgment against Thomas Pilbeam and in favor of FFCC on FFCC's

- 20 -

claim for breach of Denn-Ohio Guaranty 1;

D.      Enter judgment against JMAD and in favor of FFCC on FFCC's claim for breach of Denn-Ohio Guaranty 2;

E.      Enter judgment against PTS and in favor of FFCC on FFCC's claim for breach of Denn-Ohio Guaranty 3;

F.      Enter judgment against Executor and in favor of FFCC on FFCC's claim for breach of Denn-Ohio Guaranty 4;

G.      Enter judgment against Thomas Pilbeam and in favor of FFCC on FFCC's claim for breach of PTS Guaranty 1;

H.      Enter judgment against Nancy Pilbeam and in favor of FFCC on FFCC's claim for breach of PTS Guaranty 2;

I.      Enter judgment against Pilbeam Trustee and in favor of FFCC on FFCC's claim for breach of PTS Guaranty 3;

J.      Award FFCC compensatory damages for its claims against Defendants in an amount to be proven at trial;

K.      Appoint a receiver to take possession and control of Borrowers and their assets and for such other purposes as may be set forth in any order appointing such receiver;

L.      Award FFCC prejudgment interest;

M.      Award FFCC the cost and expenses incurred in litigating this action;

N.      Award FFCC its reasonable attorneys' fees; and

O.      Award FFCC such other relief as this Court deems just and proper.

20055316v1

Respectfully submitted,

*/s/* Jeffrey M. Hendricks
Jeffrey M. Hendricks (0066889)
**Bricker Graydon LLP**
312 Walnut Street, Suite 1800
Cincinnati, OH 45202
Phone:  (513) 629-2786
Fax:  (513) 651-3836
Email: jhendricks@brickergraydon.com

***Attorneys for First Franchise Capital Corporation***

- 22 -